UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES,<br>    *Plaintiff*,<br>v.<br>ROBERT EPPS,<br>    *Defendant*. | Case No. 3:18cr19(JBA)<br><br>June 12, 2018 |

**SENTENCING OPINION**

Defendant Robert Epps pled guilty to one count of possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The parties' dispute over his base offense level is based on their disagreement regarding whether Defendant's two prior offenses under Conn. Gen. Stat. § 21a-277(a) qualify as "controlled substance offenses" under U.S.S.G. § 2K2.1(a)(1).

**I. Facts**

On August 28, 2017, in New Haven, Connecticut, Mr. Epps was involved in the unlawful sale of a firearm and ammunition, namely a Smith and Wesson .223 caliber AR-15-style semiautomatic rifle, a C Products Defense rifle magazine containing nine Remington .223 caliber rounds, and a Brownell's rifle magazine containing thirty Remington .223 caliber rounds. (*See* PSR ¶ 9.) The Government represents that this weapon had been stolen one month earlier and that Mr. Epps knew or had reasonable cause to know that the firearm was stolen. (*Id.* ¶ 10.) Inasmuch as Defendant does not dispute this representation, the Court has not explored the basis for that knowledge. At the time that he possessed this firearm and ammunition and engaged in this transaction, Mr. Epps had sustained multiple prior felony convictions, and was barred from legally possessing a firearm. (*Id.*)

## II. Discussion

The Government maintains that Mr. Epps' base offense level is 26 under U.S.S.G. § 2K2.1(a)(1) because he committed the instant offense after sustaining two felony convictions of a controlled substance abuse: (1) Possession of Narcotics with Intent to Sell, in violation of Conn. Gen. Stat. § 21a-277(a), on December 4, 2012; and (2) Possession of Narcotics with Intent to Sell, in violation of Conn. Gen. Stat. § 21a-277(a), on January 11, 2012. Mr. Epps, however, asks this Court to find that these two convictions are not qualifying controlled substance offenses, and therefore to find that his base offense level is 20.

### A. Legal Framework

When determining whether a conviction qualifies as a predicate offense under the Sentencing Guidelines, the Second Circuit uses the framework set forth by the Supreme Court in the context of analyzing whether a prior conviction qualifies as an Armed Career Criminal Act ("ACCA") predicate.[1] *See United States v. Savage*, 542 F.3d 959, 964 (2d Cir. 2008); *see also United States v. Walker*, 595 F.3d 441, 443 (2d Cir. 2010) ("Whether a prior conviction following a guilty plea to a statutory offense is a qualifying predicate for a Guidelines enhancement is guided by the two-step 'modified categorical approach' described in *Savage*.").

That framework requires that sentencing courts start with a categorical approach which requires them to look "to the fact of conviction and the statutory definition of the prior offense." *Taylor v. United States*, 495 U.S. 575, 602 (1990). "If the relevant statute has the same elements as the 'generic' ACCA crime, then the prior conviction can serve as an ACCA predicate; so too if the

---

[1] "The government bears the burden of showing that a prior conviction counts as a predicate offense for the purpose of a sentencing enhancement." *Savage*, 542 F.3d at 964.

statute defines the crime more narrowly." *Descamps v. United States*, 570 U.S. 254, 261 (2013). "But if the statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an ACCA predicate, even if the defendant actually committed the offense in its generic form." *Id.*

However, where a state "statute lists multiple, alternative elements," that statute is "divisible" and the modified categorical approach comes into play. *Id.* at 263-64. This approach is a tool for implementing the categorical approach, which allows the sentencing court to look to additional sources, including "the indictment or information and jury instructions," *Taylor*, 495 U.S. at 602, in order to enable it to "determine which of a statute's alternative elements formed the basis of the defendant's prior conviction," *Descamps*, 570 U.S. at 262. Once a sentencing court has used such materials to identify the element underlying the conviction, it then must apply the categorical approach to determine if the prior conviction qualifies as an ACCA predicate. *See id.* at 263.

Recently, the Supreme Court held that the modified categorical approach is not available where a statute "enumerates various factual means of committing a single element." *United States v. Mathis*, 136 S. Ct. 2243, 2249 (2016). Thus,

> The first task for a sentencing court faced with an alternatively phrased statute is . . . to determine whether its listed items are elements or means. If they are elements, the court should do what we have previously approved: review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction, and then compare that element (along with all others) to those of the generic crime. But if instead they are means, the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution. . . . [T]he court may ask only whether the *elements* of the state crime and generic offense make the requisite match.

*Id.* at 2256. (internal citation omitted).

To determine whether a state statute lists alternative elements or alternative means, courts are directed to consider whether: (1) "a state court decision definitively answers the question;" (2) the "statutory alternatives carry different punishments" and therefore must be elements under *Apprendi*; and (3) the statute itself "identif[ies] which things must be charged (and so are elements) and which need not be (and so are means)." *Id.*

Defendant makes two independent arguments that his prior convictions do not constitute predicate offenses such that he is subject to the 2K2.1 enhancement. First, he claims that the list of actions set forth in Conn. Gen. Stat. § 21a-277(a) prohibits conduct not prohibited under federal law (thereby failing to satisfy the categorical approach) and that these actions are alternative means of committing the offense (thereby rendering unavailable the modified categorical approach). Second, Defendant argues that the state scheme prohibits controlled substances not prohibited under federal law (thereby failing to satisfy the categorical approach) and that these drugs are alternative means of committing the offense (thereby rendering unavailable the modified categorical approach).

### B. The Actions Prohibited by Conn. Gen. Stat. Section 21a-277(a)

U.S.S.G. § 2K2.1(a)(1) provides for a base offense level of 26 if (A) the offense involved a semi-automatic firearm capable of accepting a large capacity magazine (which is undisputed here) and (B) "the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." In turn, Application Note 1 provides that a controlled substance offense "has the meaning given that term in § 4B1.2(b) and Application Note 1 of the Commentary to § 4B1.2." Under § 4B1.2(b), a controlled substance offense is:

4

[A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

On the other hand, Conn. Gen. Stat. § 21a-277(a) imposes specified penalties on: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance."

The Government does not dispute that this state statute casts a wider net than its federal counterpart. In *Savage* the Second Circuit determined that a violation drawn from the same list of alternative actions in Conn. Gen. Stat. § 21a-277(b) does not qualify categorically as a "controlled substance offense" because "the Connecticut statute, by criminalizing a mere offer to sell, criminalizes more conduct than falls within the federal definition of a controlled substance offense." 542 F.3d at 966. The Second Circuit found that the statute of conviction was overly inclusive, and therefore it applied the modified categorical approach to determine whether the Government established that the defendant's plea necessarily rested on the elements of a predicate offense. *Id.*

However, *Savage* predated *Mathis*, and Defendant argues that Section 21a-277(a) lists alternative means of triggering liability, and not distinct elements of the crime, thereby requiring that the court apply only the categorical, and not the modified categorical approach. Given the Government's acknowledgement that Conn. Gen. Stat. § 21a-277(a) is broader than the definition of a controlled substance offense under U.S.S.G. § 2K2.1(a)(1), if the Court determines that *Mathis*

5

precludes application of the modified categorical approach, Defendant's two prior offenses would *not* constitute predicate offenses under the categorical approach.

The question then, is whether the list of actions in Section 21a-277(a) are alternative elements of that offense, in which case the Court is required to apply the modified categorical approach, or rather, are alternative means, which would preclude the Court from applying the modified categorical approach.

Under the Government's view, the list of alternative actions in Section 21a-277(a) must be deemed elements of the offense, not means, because under Connecticut law the jury must be unanimous in finding that a defendant committed one of these alternative actions. (Gov't Memo. [Doc. # 22] at 10.) The Government contends that "[s]uch unanimity is the hallmark of an element," (*id.* at 13) citing *State v. Jackson*, in which the Appellate Court of Connecticut determined that "an examination of the statutory definitions of 'sale' and 'dispense' [in Section 21a-277(a)] would ordinarily require a conclusion that they are conceptually distinct from each other, and that therefore, a specific unanimity charge on each of them would be required." 13 Conn. App. 288, 293 (1988).[2]

Defendant responds that the Government's argument fails to account for the fact that Connecticut sometimes requires that a jury return a unanimous verdict concerning the factual

---

[2] The Government notes that "[t]he offense of possession of a narcotic substance with intent to sell requires proof that the defendant possessed a narcotic substance." *State v. Mahon*, 729 A.2d 242, 244 (Conn. App. 1999) (internal quotation marks and citation omitted). But, as the Second Circuit reasoned in *Savage*, an offer to sell a narcotic substance does not require such possession. *See* 542 F.3d at 965. It therefore concludes that because these two alternative actions are conceptually distinct, a specific unanimity instruction would be required (if the prosecution presented evidence supporting each alternative).

6

foundation of an element of an offense, particularly where the charge is not specific to the precise conduct triggering criminal liability. (Def.'s Reply [Doc. # 25] at 3.)

In *State v. Suggs*, the Connecticut Supreme Court explained that

> In essence, the unanimity requirement as enunciated in [*United States v. Gipson*, 553 F.2d 453 (5th Cir. 1977)] and its progeny requires the jury to agree on the factual basis of the offense....Where a trial court charges a jury that the commission of any one of several alternative acts would subject a defendant to criminal liability, a unanimity charge on a specific charge is required only if two conditions are met: (1) the alternative acts are conceptually distinct from each other; and (2) the state has presented supporting evidence on each alternative act.

209 Conn. 733, 761 (1989). The Supreme Court has rejected the "conceptual groupings" framework in *Gipson*, recognizing that "legislatures frequently enumerate alternative means of committing a crime without intending to define separate elements or separate crimes." *Schad v. Arizona*, 501 U.S. 624, 636 (1991).

Defendant argues that the *Jackson* court's analysis focused on the factual means by which an element is committed, as evidenced by the Connecticut Supreme Court's later discussion of *Jackson* where it stated that "the state [had] alleged arguably alternative means by which the defendant could have committed the crime." *State v. Bailey*, 209 Conn. 322, 333 (1988). "In essence, the unanimity requirement as enunciated in *Gipson* and its progeny requires the jury to agree on the factual basis of the offense. The rationale underlying the requirement is that a jury cannot be deemed to be unanimous if it applies inconsistent factual conclusions to alternative theories of criminal liability." *Id.* at 334. Thus, Connecticut case law makes relatively clear that the unanimity requirement is concerned with ensuring unanimous determinations of the factual means proved by which an element is committed, not with distinguishing elements from one another.

7

However, this does not end the question, but simply cuts against the Government's argument that the mere fact that a unanimity instruction may be required means the statute must list alternative elements.

The parties dispute the significance of *State v. Mierez*, 590 A.2d 469 (Conn. App. 1991), which noted, without explanation or analysis, that

> The information that was submitted to the jury was specific in that it charged that "on or about August 1, 1989, at approximately 1:40 p.m. at or near 11 Sargeant Street in the city of Hartford, the defendant Renwrick Mierez...did sell a narcotics substance, to wit, cocaine, in violation of General Statutes § 21a-277(a)...." The state alleged no alternative theory of criminal liability, such as possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-277(a). Instead, the state elected to proceed on the very specific allegation of a sale.

*Id.* at 550-51. The appellate court reversed the defendant's conviction because there was insufficient evidence of the crime of sale of narcotics. *Id.* at 554.

Defendant claims this language supports his argument that these are alternative methods of committing the same crime and therefore the actions listed are indivisible under *Mathis*. (Def.'s Mem. at 7.) The Government claims that in *Mierez* "the evidence was sufficient for a conviction based on possession with intent to sell, [but] it was not sufficient for a conviction based on sale" and that "[i]f the alternative actions were merely means of committing the offense, then the defendant would have violated Conn. Gen. Stat. § 21a-277(a) and his sufficiency challenge would have failed." This Court does not read *Mierez* to suggest that there was sufficient evidence to proceed on an alternative theory. (*See* Gov't Mem. at 14.) Rather, it would seem that the appellate court's point was that where the state chose to proceed under a particular theory of liability under the statute, and did not present sufficient evidence to prevail on that theory, the jury's verdict could not be upheld.

While Connecticut state courts do not require that a defendant be charged with a specific *actus reus* under § 21a-277(a), the actions are only means of triggering liability, not distinct elements of the crime. *See State v. Cavanaugh* (noting that "the state charged the defendant . . . with conspiring to distribute, sell or otherwise dispense a narcotic substance in violation of General Statutes § 21a-277a," not specifying one act in particular). Given this language, and applying the rule of lenity, the Court concludes, while recognizing this to be a very close question, that the actions listed in the statute are indivisible and define only a single crime.

### C. The Substances Penalized Under Conn. Gen. Stat. Section 21a-277(a)

Defendant's second, independent argument is that the statute is overly broad because it lists two drugs which are undisputedly not included in the federal drug schedule, and the type of substance at issue is part of the means, not a separate element, meaning the Court is not permitted to apply the modified categorical approach.

The Sentencing Guidelines § 4B1.2(b) defines a "controlled substance offense" as "an offense under federal *or state law*, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." (emphasis added). The Government argues that the plain language of the Guidelines provision encompasses substances controlled by a state even if those substances do not appear on the federal schedules, and therefore this has no bearing on whether Defendant's convictions under Conn. Gen. Stat. § 21a-277(a) qualify as controlled substance offenses. (Gov't Mem. at 15, 17.)

The Government relies on *United States v. Laboy*, in which the district court concluded "that the Guidelines definition for controlled substance offense clearly intends to incorporate state

9

drug schedules." No. 16-CR-669 (AJN), 2017 WL 6547903, at *5 (S.D.N.Y. Dec. 20, 2017). One of the cases in tension with *Laboy* is *United States v. Barrow*, which held that "[b]ecause HCG is criminalized by New York but not by the federal government, a conviction under New York Penal Law § 220.31 is categorically broader than a conviction for a generic 'controlled substance offense'" as defined by § 2K2.1 of the Guidelines. 230 F. Supp. 3d 116, 124 (E.D.N.Y. 2017). The *Barrow* court noted that "[s]everal courts of appeals have held that state laws which ban substances that are not listed in the schedules of the federal Controlled Substances Act ("CSA") are categorically broader than the generic Guidelines 'drug trafficking offense.'" *Id.* at 123 (collecting cases). The court found these holdings persuasive given that the elements of a predicate "drug trafficking offense" under the Guidelines are largely the same as the elements of a predicate "controlled substance offense" under the Guidelines.[3] *Id.* (citing *United States v. Ford*, 509 F.3d 714, 716 (5th Cir. 2007) (recognizing that the terms "controlled substance offense" and "drug trafficking offense" have "nearly identical USSG definition[s]")).

The fundamental purpose of the Guidelines is to promote "reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." *United States v. Savin*, 349 F.3d 27, 34 (2d Cir. 2003). Defendant therefore claims the Guidelines cannot be understood to simply incorporate any state definition of a controlled substance offense, but that there must be a federal definition of that term. In *Esquivel-*

---

[3] Like a "controlled substance offense" under § 2K2.1, the definition of a "drug trafficking offense" under § 2L1.2 includes an offense under federal or state law. *See* U.S.S.G. § 2L1.2, cmt., n. (1)(B)(iv) (defining a "drug trafficking offense" as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.").

10

*Quintana v. Sessions*, 137 S. Ct. 1562, 1570 (2017), dealing with a proposed definition of "sexual abuse of a minor" under 8 U.S.C. § 1101(a)(43)(A), the Supreme Court noted:

> [T]he Government's definition turns the categorical approach on its head by defining the generic federal offense of sexual abuse of a minor as whatever is illegal under the particular law of the State where the defendant was convicted. Under the Government's preferred approach, there is no "generic" definition at all.

*Id.* at 1570.[4]

The Government does not appear to dispute that under Connecticut state case law the type of substance at issue is not a separate element of the offense. *See, e.g., State v. Reynolds*, 264 Conn. 1, 82 n.71, 836 A.2d 224, 228 n. 71 (2003) ("The essential elements of § 21a-277(a) . . . are (1) the intentional or knowing (2) sale or distribution (3) of a narcotic substance, including but not limited to cocaine.") This Court finds the reasoning of *Barrow* and the appellate court decisions upon which that case relies persuasive and since the Connecticut statute is categorically broader than the generic Guidelines' "controlled substance offense," the Court is precluded from applying the modified categorical approach. Thus, Defendant's prior convictions will not qualify as predicate offenses.

---

[4] There, the federal statute provided no definition of "sexual abuse of a minor," unlike here, where the definition of "controlled substance offense" appears to contemplate inclusion of offenses involving drugs regulated by state law. Nonetheless, the reasoning is persuasive.

11

### III. Conclusion

In conclusion, the Court holds that Defendant's two prior convictions under Section 21a-277(a) are not "controlled substance offenses" under U.S.S.G. 2K2.1.

IT IS SO ORDERED.

/s/ Janet Bond Arterton, U.S.D.J.
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 12th day of June 2018.